[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court for a trial on the limited contested list. The husband and wife married on August 11, 1946, at Bridgeport, Connecticut. The wife's maiden name was Margaret Kirschblum. The parties have resided continuously in Connecticut for more than one year next preceding the date of the filing of this complaint. In fact, the parties' roots to this community are substantial in time and quality.
The parties have no minor children issue of their marriage, and no other minor children have been born to the wife since the date of the marriage. The State of Connecticut has not contributed in the support of the parties or their children. In fact, the parties have four children aged approximately 40, 38, 36, and 34.
The husband is age 69 and the wife is age 67. The husband had a private practice of obstetrics and gynecology in Bridgeport from 1955 answer associated thereafter with others I until he retired from his practice in 1988. In fact, his wife was his last patient.
This was a very traditional marriage with the wife taking care of the home and the children and the husband working outside the home and providing the earnings. An indication of how times change is the fact that when the husband first started practicing, malpractice insurance was $127.00 per year and when he left it was up to $90,000.00 per year.
The problems began in the marriage after the birth of the fourth child when the wife was depressed for a substantial period of time somewhere between six and eight years. The wife's symptoms were insomnia, difficulty in getting up and difficulty in doing things outside the home among others.
Both of the parties came into the marriage without any property and all of their current property was accumulated during the course of the marriage. During the early part of the marriage, when the husband was in medical school, the wife worked. The husband attended Yale University undergraduate and New York Medical College thereafter.
It is clear to this court that this marriage has broken down CT Page 1112 irretrievably. The husband cited incidents which he believed caused the marriage to break down irretrievably. The wife, even during the course of the trial, felt that the marriage had not broken down irretrievably. A true sign of an irretrievably broken down marriage is when the parties are unable to agree whether or not, in fact, it has broken down. Suffice it to say, this court finds from the testimony of the parties that the marriage has broken down irretrievably.
A lot of money came into this marriage. A lot of money went out of the marriage. A lot of money stayed in this marriage. This marriage was, in fact, a traditional, true partnership. This court, having heard all of the evidence, is convinced that both parties performed admirably the role they were expected to play in the marriage.
This court has been asked by the parties to resolve problems that they were not able to resolve themselves. With a marriage of this length and their inability to resolve it, it leaves this court to do what it feels is just. This court declines the invitation to go through each and every item of personal property and determine who should be the rightful. owner.
Both parties presented real estate experts who basically agreed on the valuation of the marital homestead at 30 Windy Ridge, Trumbull, Connecticut, presently occupied by the wife, but they disagreed substantially on the value of the lot (or lots) on the adjacent property.
The court finds it has jurisdiction. The court has listened to the parties and listened to their witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all the criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute, 45b-82, the alimony statute. 46b-62, the attorney's fees statute, and all other relevant statutes. In addition, the court has reviewed the financial affidavits of the parties and listened to the arguments of counsel and reviewed their proposed orders. Accordingly, the court orders as follows:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The court finds that the property known as 30 Windy Ridge, Trumbull, Connecticut, has a value of $238,000.00. It is subject to a first mortgage of $15,160.00 and a second mortgage of $78,600.00. The court finds that the net equity in the property is accordingly $144,240.00. This asset is awarded to the wife to be her sole and exclusive CT Page 1113 property free of any and all claims from the husband. Any documents needed to effectuate this transfer shall be executed by the husband. within thirty days of this date otherwise, the property is ordered transferred and all claims released pursuant to Connecticut General Statutes 46b-81.
3. The husband presently owns a condominium at Heritage Village in Southbury, Connecticut. The fair market value is found by this court to be $61,500.00. There is a mortgage of $47,400.00. There is a net equity of $14,100.00. The court orders that this property be the sole and exclusive property of the husband free of any and all claims from the wife. Any documents needed to effectuate this transfer shall be executed by the wife; otherwise, the property is ordered transferred and claims released pursuant to Connecticut General Statutes 46b-81.
4. The Aruba time-share consists of two weeks in Aruba, which two weeks are owned by the parties. The court finds that the fourth week is worth $32,100.00 and that the fifth week is worth $36,800.00 (the fourth week is the last week in January and the fifth week is the first week in February). The wife has the choice as to which week she desires. She shall make that choice within ten (10) days of this decision and notify the husband in writing, and the parties shall then do all that is necessary to transfer one to the other the respective week.
5. The wife shall keep her 1985 Mercedes valued at $25,000.00 as her sole and exclusive property free of any claims of the husband.
6. The 1969 Mercedes shall be sold and the net proceeds after costs of sale divided equally between the parties.
7. The wife shall keep her IRA in the sum of approximately $17,800.00 as her sole and exclusive property free of any claims of the husband.
8. All the personal property shown on Plaintiff's Exhibit One is hereby ordered sold. All of the net proceeds after the costs of the sale are to be divided equally between the parties. As it relates to the carpenter's workshop, the husband shall have the option to meet the highest offer on the carpenter's workshop. So that, by way of example, is the highest offer is $10,000.00, the husband may meet that offer. Since the proceeds are being divided one half to each party, he shall pay to his wife the sum of $5,000.00 by way of example. The same shall apply to the collection CT Page 1114 of 19th and 20th century ceramic tobacco jars as shown on page 10 of said report. The husband shall have the same option.
 He shall exercise either option within five (5) days of the offer being made by the third party and shall make that payment in cash or certified check within two (2) days thereafter.
 The parties may however divide all the property as shown on Exhibit One to their mutual satisfaction in lieu of sale.
9. The remaining contents of the house at 30 Windy Ridge, Trumbull, Connecticut, shall })e the wife's and the contents of the condominium at Heritage Village shall be the property of the husband.
10. The "Bank Accounts and Other Cash" as shown on the wife's financial affidavit totalling $91,490.00 are to be divided equally between the parties. So that each account with their current balance shall be divided in half within twenty (20) days of the date of this order. So that, by way of example, where it shows "Fleet Bank — joint savings ($1,370. — jt), (1/2) $685.50", that account shall be divided equally between the parties in the sum of $685.50 to each. By way of further example, where it says, "Fleet Bank — Savings $45,300.00", the amount in that account as of the date of this decree, and this date shall apply for all of the other accounts, shall be divided equally between the parties. So that by way of example if the amount is $45,300.00, each of the parties shall receive $22,650.00.
11. The wife has jewelry not listed on her financial affidavit that cost a total of $87,000.00. There is an emerald ring that cost $17,000.00. There is a diamond ring that cost 46,000.00. There is a pearl necklace that cost $24,000.00. Those items shall be the sole and exclusive property of the wife.
12. The 1984 Saab automobile as shown on the husband's affidavit valued at $3,000.00 shall be his sole and exclusive property.
13. The 1928 Ford shown on the husband's affidavit valued at $8,500.00 is ordered sold and the net proceeds after costs of sale to be divided equally between the parties.
14. The 1930 Ford automobile as shown on the husband's financial affidavit valued at $4,000.00 is ordered sold and the proceeds, after the costs of sale, to be divided CT Page 1115 equally between the parties.
15. The husband shows two bank accounts on his financial affidavit, "CBT-Savings (Jt.) $2,200.00" and "CBT-checking (Jt.) $91.00". If those are different accounts than previously discussed in this decision and as shown on the wife's affidavit, they are ordered divided equally between the parties.
16. The Center Bank checking account as shown on the husband's affidavit is divided equally between the parties.
17. The husband shows life insurance on his life with a cash surrender value of approximately 4,000.00. The husband is not obligated to carry that insurance for the benefit of the wife unless he so desires. The cash surrender value is to be divided equally between the parties.
18. The husband shows an annuity, New England Mutual, on his financial affidavit. To the extent that that is a different account than shown on the wife's bank accounts and other cash statement, that property is ordered divided equally between the parties.
19. The husband shows a mutual fund in the sum of $4,000.00. To the extent that that is a different fund than shown on the wife's bank accounts and other cash, that property is ordered divided equally between the parties.
20. Parcels 42 and 43 are part of the property at 30 windy Ridge, Trumbull, Connecticut. Both parties have had separate appraisals. Said premises are shown as parcel one on a deed from Joseph L. Horowitz to Margaret Horowitz in Volume 427 at page 552 of the Trumbull Land Records dated July 11, 1979. The court finds the value of that property to be $125,000.00. That property is ordered transferred by the wife to the husband for his sole and exclusive use and purpose. She is to execute a quitclaim deed within twenty (20) days of this date or the property is to be transferred by operation of law pursuant to Connecticut General Statutes 46b-81.
 The appraiser of the husband indicated that if it could be broken into two separate lots it could be worth $150,000.00. Accordingly, if the husband sells the property, he is to pay to the wife one half of all of the sale price over $125,000.00. So that, by way of example, if the property is sold for $150,000.00, he is to pay her $12,500.00 even if that is the sale price from the sale of a single lot. The court recognizes that the first mortgage CT Page 1116 may encumber this property as well as the home, but that problem is left to the husband to solve.
21. The bulk of the property has been ordered sold and the proceeds divided equally. The wife, however, has received the home with an equity of $144,240.00. She has jewelry worth $87,000.00 and a car worth $25,000.00. In addition, the wife has an IRA worth $17,800.00 for a total property solely her own of $274,040.00.
 The husband has equity in his condominium of $14,100.00. The husband owns a car worth $3,000.00. The husband has been given the lot worth $125,000.00. This total is $142,100.00.
 In order to equalize this amount the court orders transferred from the IRA account to the husband the sum of $131,940.00. This totals $274,040.00 on the husband's side of the ledger and this totals $274,040.00 on the wife's side of the ledger for those listed items in Paragraph 21.
 The amount left in the IRA after the aforesaid is approximately $563,060. This remaining amount is ordered divided equally between the parties or approximately $281,530.00 each.
22. The husband is to pay off the second mortgage on the wife's house within thirty (30) days of the date of this decree. The wife shows that approximate amount to be $78,600.00. The husband agreed to pay said amount as shown on Exhibit B.
23. Based on the distribution of the assets of the parties, each of the parties are to pay their own attorney's fees. The court has taken into consideration all the statutory criteria and the case law concerning attorney's fees.
24. The husband is to pay to the wife $1.00 a year for five (5) years as alimony. The wife, during the course of the trial, expressed concern concerning the husband going back to work and/or selling his book and making royalties or otherwise producing earned income. The $1.00 a year alimony is only to cover the situation where the husband earns income from employment (earned income) not investments, capital gains and the like.
 The husband has indicates he has no intention of going back to work. In the event, however, that he does and has earned income, he is to pay to the wife 35 per cent (35%) of his net after tax income. So by way of example, if he were to earn $1.00 and pay $.33 in taxes, he would be left CT Page 1117 with $.66. He would pay her 35 per cent of the $.66 or $.23.
25. The wife receives Social Security of $93.09 per week. The husband receives Social Security of $224.65 per week for a total of $317.74. One half of that is $158.87. The wife receives $93.09. Accordingly, the husband shall pay to the wife weekly $65.78 in order to equalize the Social Security benefits. That amount is payable to her as periodic alimony. Said amount is to be paid as long as the husband is alive and as long as the wife is unmarried or until the wife dies.
26. The wife is to pay her own personal loans as set forth on her financial affidavit under liabilities. In addition, the wife shall pay for a $900.00 American Express bill for her vacation which she took during the course of the litigation.
27. The court leaves each of the parties with their frequent flyer mileage that they have in their own accounts.
28. The income taxes due by the parties for the year 1991 shall be paid equally by them from whatever sources they choose. So that by way of example, if they still owe a total of $15,000.00 in income taxes, each of the parties would pay $7,500.00.
29. The husband is awarded all the items shown on "Amended Schedule `A' page 1" attached hereto being items A-E.
EDWARD R. KARAZIN, JR. JUDGE
AMENDED SCHEDULE "A" (Page 1) THE FOLLOWING ITEMS OF PERSONAL PROPERTY ARE NOT INCLUDED IN THE APPRAISAL, AND THE VALUES ARE ESTIMATED Estimated Value
(A) From the Workshop:
 (1) All patterns, plans and drawings for carousel and rocking horses. $ -0-
 (2) Books relating to woodworking and old cars. $ -0-
(B) Photographs:
(1) Elliot Porter color print CT Page 1118 and book. $1,250 — $1,900
 (2) Caponigro prints — Astral Apple and Redding Woods — and book. (only one not included) $2,000
(3) David Noble print. $ 500
 (4) Davidson print — this was a gift to the plaintiff from Bib and Marni — and book. $ 500
(5) Pinhole platinum prints (2). $ 400
(C) Prints:
(1) Lear birds (3), and book. $ 700 — $ 900
 (2) Litho — Lady in the Mirror. (may be in group of 33) $ 300 — $ 400
 (3) Topographic engraving. (may be in group of 33) $ 200
(D) Antiques:
(1) Unopened Pocher Kit Car. $ 250
 (2) Handel miniature twin student lamp $1,000 (or appraised bronze Tiffany desk Lamp — See Page 2)
(E) Miscellaneous:
 (1) Espresso pot — This was a gift to the plaintiff from M. Master. $ 75
 (2) Three-legged folding stool with leather seat. $ 100
(3) Pipe collection. $ 300 — $ 400